```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

Serna, Ral Abner,                  :
     Petitioner,                   :
                                   :
v.                                 :
                                   :   Case No. 06cv308 (JBA)
Secretary of the Department        :
of Homeland Security, et al,       :
     Respondents.                  :
```

## RULING AND ORDER

Ral Abner Serna, a citizen of Peru, filed a petition for a writ of habeas corpus [Doc. # 1] pursuant to 28 U.S.C. § 2241 challenging his detention by the Federal Bureau of Immigration and Customs Enforcement ("BICE"), and naming as Respondents the Attorney General, the Secretary of the Department of Homeland Security, and the Director of BICE. The habeas petition represents that, at the time of filing, Serna was "detained in Hartford, Connecticut and may be transferred to the Suffolk County Correctional Center in Massachusetts where he will await imminent deportation." Petition ¶ 14. As anticipated in his petition, Serna was subsequently transferred to a detention facility in Boston, Massachusetts, as reflected in filings of the parties. On March 2, 2006, the Court ordered respondents to show cause why the relief prayed for in the petition should not be granted [Doc. # 5], and on the same date denied petitioner's motion to stay deportation without prejudice as no deportation date had been scheduled [Doc. # 4]. Respondents answered the

order to show cause on March 9, 2006, arguing that the petition should be dismissed for lack of jurisdiction [Doc. # 6], which petitioner has opposed [Doc. # 8].  For the reasons that follow, the Court determines that personal jurisdiction and venue are appropriate in the District of Connecticut and therefore this case will not be dismissed.  Petitioner will be given 10 days in which to file an amended petition naming the BICE Boston Field Office (or District) Director as respondent.

**I.   Background**

Serna's habeas petition alleges the following facts, which will be accepted as true for present purposes.  Serna, a native and citizen of Peru, entered the United States without inspection on February 20, 1997.  Petition ¶ 3.  He was placed in deportation proceedings pursuant to the issuance of a Notice to Appear dated April 3, 2001.  Id. ¶ 4 & Ex. A.  On April 11, 2001, petitioner married a lawful permanent resident of the United States, id. ¶ 5 & Ex. B, and his wife submitted an I-130 application on his behalf on April 23, 2001.  Id. ¶ 6 & Ex. C.  Serna's previous counsel submitted several motions requesting continuances of the deportation proceedings to allow for adjudication of the I-130 petition, but on October 22, 2002, the Immigration Judge refused to grant a further continuance and ordered petitioner removed from the United States.  Id. ¶¶ 7-8.  Petitioner's appeal was denied by the Board of Immigration

Appeals ("BIA") on March 23, 2004.  Id. ¶ 9 & Ex. D.  Petitioner did not receive notice of the BIA denial from his former attorney until April 22, 2004 and he was thus prevented from filing a timely appeal with the Second Circuit.  Id. ¶ 10 & Ex. E.  Petitioner filed a motion to reopen and remand with the BIA on December 6, 2005 claiming, inter alia, ineffective assistance of counsel; that motion remains pending.  Id. ¶ 11.

Petitioner's I-130 application was approved on March 7, 2005; no notice of the approval was received by petitioner or his counsel and thus a duplicate copy was requested and received in January, 2006.  Id. ¶ 12 & Ex. F.  However, on March 1, 2006, petitioner was arrested and detained by BICE officers, first detained in Hartford, Connecticut, and ultimately transferred to a detention facility in Boston, Massachusetts, awaiting deportation.  Id. ¶¶ 13-14; Petitioner Reply [Doc. # 8] at 2.

Serna now challenges his detention contending, inter alia, that "[t]here is no congressional mandate compelling [his] detention and deportation where [he] is now eligible for immigration benefits despite [his] order of removal."  Petition, page 3, ¶ 1(c).  He seeks release on bond pending adjudication of his petition and immigration proceedings or, in the alternative, an order directing the immigration court to conduct a custody review hearing.  Petition, Prayer for Relief Pt. III.  While the exact nature of the additional relief petitioner desires is

unclear from the petition, it appears that he seeks an order directing BICE to release him from detention and to allow him to obtain immigration benefits for which he claims he is eligible by virtue of his I-130 application approval. Petition ¶ 14, Prayer for Relief.[1]

## II. Discussion

Federal courts have jurisdiction to issue writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). Respondents argue, based on Rumsfeld v. Padilla, 542 U.S. 426 (2004), that this case is not properly brought in this District because the appropriate respondent is the individual with day-to-day custody over petitioner who is now detained in Massachusetts, outside this Court's jurisdiction.

A writ of habeas corpus "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. In Padilla, 542 U.S. at 441-42, the Supreme Court held that in a case falling within "the traditional core of the Great Writ," namely "a simple challenge to physical custody imposed by the Executive," there is no "basis for a departure from the immediate

---

[1] Because it does not appear that Serna is directly challenging his final order of removal, it is unnecessary to address at this time whether this case is governed by the jurisdictional provisions of the Real I.D. Act of 2005, § 106(b), INA § 242(a)(5), as amended, 8 U.S.C. 1252(a)(5) (" . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . .").

custodian rule." Thus, the appropriate respondent in that case was the commander of the naval brig where Padilla was detained. However, the Supreme Court expressly declined to decide whether its holding applied to immigration cases. Id. at 435 n.8 (declining to resolve the issue of "whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation").

In Henderson v. INS, 157 F.3d 106 (2d Cir. 1998), the Second Circuit also discussed the issue but ultimately declined to decide it. In that case, two petitioners filed their cases in New York and named as respondents both the Attorney General and the INS District Director in New Orleans who had lodged detainers against them before they were released on bond and returned to New York. The government argued that the only proper respondent was the New Orleans District Director. Id. at 122-23. Treating the question as one of personal jurisdiction, the Second Circuit certified the question of whether the District Director was subject to personal jurisdiction under New York's long arm statute to the New York Court of Appeals. Id. at 124. The New York Court of Appeals declined certification and the parties ultimately settled. See Yesil v. Reno, 175 F.3d 287 (2d Cir. 1999) (per curiam).

Against this backdrop, three issues emerge in this case: (1) Who is the proper respondent to Serna's petition? (2) Does

this Court have personal jurisdiction over that respondent?  (3) Is venue proper in the District of Connecticut?

   A.   Proper Respondent

   Under Padilla, Henderson, and their antecedents, this Court must have personal jurisdiction over the proper respondent in order to entertain a habeas petition.  See also Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996) ("Failure to name the correct respondent destroys personal jurisdiction.").

   Respondents argue that Padilla's "immediate custodian" rule should apply to Serna's petition.  They further contend that Serna's immediate custodian is "the Warden of the detention facility in Massachusetts, the facility where petitioner is now confined."  Resp. Br. [Doc. # 6] at 9.  Elsewhere in their brief, respondents claim that "the official who has custody of petitioner and who can produce him is the BICE Field Office Director in Massachusetts, not any official located in the District of Connecticut."  Id. at 8.

   Contrary to respondents' expansive reading of Padilla, nothing in the opinion indicates that the "immediate custodian" rule should be applied to non-"core" habeas cases.  See Campbell v. Ganter, 353 F. Supp. 2d 332, 336 (E.D.N.Y. 2004), pet. for review denied, 155 Fed. Appx. 25 (2d Cir. 2005) (unpublished). "Unlike Padilla, the district of confinement is not synonymous with the district court that has territorial jurisdiction over

6

[the petitioner's] immediate custodian" in many immigration cases. Id. (emphasis in original). Respondents cite no authority for the proposition that the Padilla rule should be extended to immigration cases, and for the reasons that follow, the Court declines to do so now.

In this case, unlike the "core" situation of a prisoner challenging a conviction or pre-trial detention, naming the warden of the facility where Serna is currently incarcerated would not serve the purpose of the immediate custodian rule because if named as respondent, the warden would have to look to BICE for authority to release petitioner from detention as petitioner is held in that facility only on the authority of a BICE detainer. A federal respondent is thus necessary to the adjudication of Serna's petition.

This raises the question of the appropriate federal respondent. Respondents argue that the Attorney General is not an appropriate respondent, as he is too high in the governmental hierarchy to be considered petitioner's immediate custodian. See Resp. Br. at 4 ("While the Attorney General is the ultimate overseer of all federal prisoners, []he is not responsible for day-to-day prison operations and does not hold prisoners in actual custody."). Respondents state that the person with direct control over Serna, who can produce him, is the BICE Field Office Director in Boston, Massachusetts. Id. at 8, citing 8 C.F.R. §

7

100.2(d)(2)(ii)(2005) (Regional service districts "are responsible for the administration and enforcement of the [Immigration and Nationality] Act and all other laws relating to immigration and naturalization within their assigned geographic areas of activity").  Other courts have found that the Field Office Director is the appropriate respondent in a § 2241 immigration petition.  See Campbell, 353 F. Supp. 2d at 336 (field office director "of local ICE office" is proper respondent, rather than district director of Customs and Immigration Service, in habeas petition challenging removal due to felony conviction).  Because the Field Office Director (also called the District Director) directly enforces the immigration laws within his or her territorial jurisdiction, he or she is the person who can produce the petitioner and show cause why he should be detained pursuant to the immigration laws.

     Thus, the Boston Field Office Director is the appropriate respondent in this case, as Serna is detained in Boston.  Serna has named as a respondent the Director of ICE, but has not specifically designated the Boston Field Office (or District) Director as a respondent.  Because the Court concludes that this individual is the appropriate respondent, Serna will be given leave of 10 days in which to file an amended petition including

the Boston Field Office Director as a respondent.[2]

### B.   Personal Jurisdiction

The next question is whether the District Court for the District of Connecticut has personal jurisdiction over the Boston Field Office Director.  "So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction."  Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 495 (1973); see also Malone v. Calderon, 165 F.3d 1234, 1237 (9th Cir. 1999) ("The court issuing the writ must have personal jurisdiction over the custodian.  Without such jurisdiction, the court has no authority to direct the actions of the restraining authority.") (internal citations omitted).

The personal jurisdiction analysis depends on application of

---

[2] Because the Court will permit Serna to amend his petition to include the Field Office (or District) Director as a respondent, it is therefore not necessary to decide the question of whether the Attorney General may be named as the only respondent in an immigration habeas petition.  However, the Court notes the observation made in Cummings that district courts in this Circuit "have regularly recognized the Attorney General as a proper respondent to an alien's habeas corpus petition."  353 F. Supp. 2d at 336 n.2 (citing cases).

Connecticut's long arm statute.[3]  See Henderson, 157 F.3d at 123; Campbell, 353 F. Supp. 2d at 338 (Eastern District of New York had personal jurisdiction over district director located in Southern District of New York because New York provides for statewide service of process).

As a preliminary matter, it must be noted that the Boston District of BICE encompasses the state of Connecticut.  See 8 C.F.R. § 100.4(b)(2) (Boston District "has jurisdiction over the States of Connecticut, New Hampshire (except the Port-of-Entry at Pittsburg, New Hampshire), Massachusetts, and Rhode Island").  By contrast, in Henderson, 157 F.3d at 123, the district courts were required to examine particular actions taken by the field office in New Orleans, such as sending letters and approving petitioners' travel to New York, in order to determine whether

---

[3] Conn. Gen. Stat. § 52-59b(a) provides: "[A] court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, . . . or a computer network, . . . located within the state."

10

the field office director "purposefully availed himself of the privilege of conducting activities within New York," to satisfy the due process inquiry, and that the "petitioners' causes of action 'arose out of'" the director's actions in New York to satisfy the long arm requirements.  Here, the Boston Field Office Director necessarily controls all immigration enforcement in Connecticut, because he is responsible for most of New England. 8 C.F.R. § 100.4(b)(2).  Thus, the Court is presented with a situation more analogous to Campbell, which rejected the government's argument that because the New York field office was located in the Southern District, judges in the Eastern District lacked jurisdiction over the district director and therefore lacked jurisdiction to entertain § 2241 petitions from immigration detainees.  In Campbell the New York District field office was responsible for immigration enforcement in all of metropolitan New York City and Long Island, which includes the Eastern District.  353 F. Supp. 2d at 337.

If respondents' suggestion that petitioner should be required to pursue his petition in the District of Massachusetts were accepted in this case, the entire District of Connecticut would be divested of jurisdiction to hear any immigration habeas cases as the district director for Connecticut sits in Boston. While the Court "is intrigued by the government's invitation to reduce its docket," it declines to do so.  Campbell, 353 F. Supp.

2d at 337.  First, respondents cite no authority that would limit jurisdiction over immigration habeas petitions to only the 21 judicial districts containing BICE district offices.[4]  Second, such a limitation could cause undue hardship for petitioners, particularly those appearing pro se, who would be forced to litigate in only certain cities potentially far from their places of residences and/or detention.  Third, it would disproportionately channel to federal courts in such districts all § 2241 immigration habeas petitions that are not now precluded by the Real I.D. Act.  For these reasons, the Court rejects the argument that the Boston district director is automatically excluded from personal jurisdiction in Connecticut simply because the office is located in Boston.

Under Connecticut's long arm statute, personal jurisdiction exists over an individual who, among other acts, "transacts business" in the state or who commits a tort in the state.  Conn. Gen. Stat. § 52-59b(a).  Personal jurisdiction over the Boston district director could exist under either provision.  The term "transacts any business" has been construed to embrace "a single purposeful business transaction."  Zartolas v. Nisenfeld, 184

---

[4] The BICE Office of Detention and Removal has Field Offices in Atlanta, Baltimore, Boston, Buffalo, Chicago, Dallas, Denver, El Paso, Fairfax/Washington D.C., Houston, Los Angeles, Miami, Newark, New Orleans, New York, Phoenix, San Antonio, San Diego, San Francisco, Seattle, and St. Paul.  See http://www.ice.gov/about/dro/contact.htm (last visited 5/24/06).

Conn. 471, 474 (Conn. 1981). To carry out the business of enforcing the immigration laws in Connecticut, the district director necessarily employs people in Connecticut, spends funds for enforcement and detention in Connecticut, and otherwise transacts business here. Additionally, petitioner alleges that he was arrested at his Norwich, Connecticut home and was detained in Hartford, Connecticut, before being transferred to and detained in Boston, and claims that his arrest and detention have deprived him of his constitutional rights. Serna thus alleges that agents of the Boston Field Office Director committed a constitutional tort against him in Connecticut when they wrongfully arrested him here. Therefore, long arm jurisdiction over the Director is appropriate under either a "transacting business" theory or a tort theory.

Exercise of long arm jurisdiction also requires "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Court examines whether the totality of "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Because the Field Office Director's territory encompasses Connecticut, he or she necessarily expects to handle

immigration cases here, and "should reasonably anticipate being haled into court" here.

Thus, the Court concludes that personal jurisdiction exists over the Field Office Director in this case.

### C. Venue

The final question is whether venue is appropriate in the District of Connecticut. The Second Circuit has suggested that "traditional principles of venue" still govern alien habeas cases, so as to minimize forum-shopping. See Henderson, 157 F.3d at 128. Under 28 U.S.C. § 1391(e):

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, . . . may . . . be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

Petitioner in this case argues that venue is appropriate in Connecticut because a substantial part of the events giving rise to his claims occurred here. He asserts his first I-130 petition was filed by his then-spouse, a United States citizen, in Hartford, Connecticut, his second I-130 petition was filed by his current Legal Permanent Resident spouse also in Connecticut, and his prior immigration proceedings took place here. See Petitioner Reply at 2. Additionally, for purposes of § 1391(e)(3), petitioner was a resident of Norwich, Connecticut

before his arrest and detention for immigration violations. Furthermore, petitioner claims that "[w]itnesses, including petitioner's spouse, children, and documents pertinent to the case are located in the state of Connecticut." Id.

Respondents do not directly address petitioner's venue argument, but they raise concerns about "the dangers of forum shopping." Resp. Br. at 7. As the Second Circuit has held, however, such concerns are diminished by "strict application" of the venue rules. Henderson, 157 F.3d at 127. These rules require consideration of the location where the events took place, the location of records and witnesses, the convenience of the parties, and the "expense and risk of transporting the petitioner." Braden, 410 U.S. at 493-94.

Here, as petitioner contends, all of the material events took place in Connecticut. It is unclear where petitioner's immigration records are now located – whether they remain with BICE in Connecticut, where his immigration proceedings took place and he was initially detained, or whether they followed him to Boston. In either case, with the advantages of modern technology, including faxes, scanners, and email, the difficulty of transferring the required immigration records ought to be minimal. Any witnesses petitioner would call, such as his wife or children, are located in Connecticut. While the Field Office Director is located in Massachusetts, he can be represented by

the United States Attorney's Office for the District of Connecticut, which is now familiar with this case.  Finally, although a modicum of additional expense will be incurred in bringing petitioner back to Connecticut for any hearings, this transport involves little risk given that petitioner is not subject to removal because of any criminal conviction.

Thus, on balance, application of the traditional venue considerations indicates that Connecticut is an appropriate venue for this case.  While there is potentially some inconvenience to the Field Office Director in appearing before this Court or producing records in Connecticut, these minor burdens are outweighed by the fact that all the events giving rise to the case, and all of petitioner's witnesses, are here.

### III. Conclusion

Accordingly, the Court is satisfied that personal jurisdiction and venue are proper in this District and petitioner shall file an amended petition naming the BICE Boston Field Office Director as respondent by July 5, 2006.  The government is directed to file its response to the merits of Serna's petition for habeas corpus by August 4, 2006.

IT IS SO ORDERED.

          /s/
Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 19th day of June, 2006.**